**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARK BLAIR and** <br> **DONNELL JAMES,** | § <br> § <br> § | |
| *Plaintiffs*, | § <br> § | **CIVIL ACTION NO. 4-25-CV-00755-SDJ** |
| **vs.** | § <br> § | **JURY DEMANDED** |
| **FINLEY REDIMIX, LLC,** | § <br> § | |
| *Defendant.* | § | |

**DEFENDANT'S ORIGINAL ANSWER TO
PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

Defendant, Finley Redimix, LLC, files this Original Answer to Plaintiffs' Original Complaint and Jury Demand ("Complaint"), and would respectfully show the Court as follows:

**NATURE OF THIS ACTION**

1.      Defendant denies the allegations in Paragraph 1 of Plaintiffs' Complaint and specifically denies any violation of the Civil Rights Act of 1866 or Title VII. Defendant did not discriminate against or retaliate against Plaintiffs. Rather, these are baseless allegations of racial discrimination and retaliation by two former employees whose terminations were based solely on legitimate, non-discriminatory business reasons. Comprehensive company data regarding pay rates, work assignments, and hours worked demonstrates that Defendant maintains non-discriminatory employment practices across all racial groups.

2.      Defendant admits Paragraph 2 of the Complaint.

3.      Defendant admits Paragraph 3 of the Complaint.

4.      Defendant denies Paragraph 4 of the Complaint. Defendant does not treat Black employees differently or less favorable than non- Black employees.

5.      Defendant denies Paragraph 5 of the Complaint. Defendant does not engage in systematic racial discrimination nor do they discriminate against any of its employees on the basis of race, disability, or any protected trait, and does not retaliate against employees for raising concerns about discrimination.

6.      Defendant denies Paragraph 6 of the Complaint. Defendant does not subject Black employees to disparate treatment in any of the manners alleged. To the contrary, the evidence demonstrates non-discriminatory practices, including but not limited to the following:: (a) during April 2024, the average hourly rate for all drivers was $24.54, with Black employees earning a similar average and including highest supervisory hourly rate at $28/hour, and other various rates throughout the pay scale; (b) the highest non-supervisory rate of $27/hour was paid to employees of multiple races including Black, Hispanic, Native American, and White employees; (c) regarding work assignments, Black drivers comprised 39% of the workforce but received only 33% of "last load" assignments—fewer than their proportional representation; (d) Black employees frequently ranked at or near the top in monthly hours worked; and (e) employees of all races appear at both the highest and lowest compensation levels, demonstrating race-neutral employment practices across all alleged areas of discrimination.

7.      Defendant denies Paragraph 7 of the Complaint. Defendant did not subject Plaintiffs to systemic race discrimination, rather Plaintiffs were treated similarly to other employees of varying races.

8.      Defendant denies Paragraph 8 of the Complaint. Any discrimination claim could not have been continuing in nature as there was never any discrimination in the first place.

9.      Defendant denies Paragraph 9 of the Complaint. Plaintiffs are not entitled to declaratory or injunctive relief, back pay, front pay, compensatory, nominal or punitive damages, or attorneys' fees, as Defendant did not engage in any discriminatory employment policies,

practices, or procedures, and all employment decisions were based on legitimate, non-discriminatory business reasons.

## JURISDICTION AND VENUE

10.     Paragraph 10 contains legal assertions, and therefore does not require an admission or denial. To the extent one is required, Defendant denies engaging in any conduct that would give rise to the statutory claims referenced in the Complaint.

11.     Paragraph 11 contains legal assertions, and therefore does not require an admission or denial. To the extent one is required, Defendant denies engaging in any conduct that would give rise to the statutory claims referenced in Paragraph 11 of the Complaint.

12.     Paragraph 12 contains legal assertions, and therefore does not require an admission or denial. To the extent one is required, Defendant denies engaging in any conduct that would give rise to the statutory claims referenced in the Complaint.

## PARTIES

**A.     Plaintiffs**

13.     Defendant admits Paragraph 13 of the Complaint.

14.     Defendant admits Paragraph 14 of the Complaint.

15.     Defendant admits Paragraph 15 of the Complaint.

**B.     Defendant**

16.     Defendant admits Paragraph 16 of the Complaint.

## FACTUAL ALLEGATIONS

17.     Defendant denies the allegations in Paragraph 17 of the Complaint. Defendant does not have a pattern and practice of discriminating against or retaliating against Black employees. This allegation is demonstrably false, as evidenced by Defendant's diverse workforce where employees of all races are represented at every compensation level from $22/hour to the highest

Driver Supervisor position at $28/hour plus $200/week held by a Black employee, the fact that of five replacement drivers hired in April-May 2024 three were Black employees, and records showing that for many months, one or more Black employees were at or near the top of the list in most hours worked, demonstrating equal access to work opportunities.

18.     Defendant denies the allegations in Paragraph 18 of the Complaint. Defendant does not discriminate against any employees based on race and its employment decisions regarding Plaintiffs were based on legitimate, non-discriminatory business reasons.

19.     Defendant denies the allegations in Paragraph 19 of the Complaint. Defendant's policies and procedures are race-neutral and applied equally to all employees regardless of race, and do not have a disparate impact against Black employees.

20.     Defendant denies the allegations in Paragraph 20 of the Complaint. Defendant does not retaliate against employees for raising concerns about discrimination, and any adverse employment actions taken against Plaintiffs were based on legitimate, non-discriminatory business reasons unrelated to any alleged protected activity. Plaintiff Mark Blair's termination was due to his repeated violations of company policy, including leaving work early without permission and posting derogatory comments about the company on social media, and had nothing to do with his race or any alleged complaints of discrimination. Plaintiff Donnell James was likewise terminated for legitimate business reasons unrelated to race, specifically due to his persistent attendance issues and failure to communicate with his supervisor.

21.     Defendant denies the allegations in Paragraph 21 of the Complaint. Defendant did not terminate or force resignations due to race discrimination or retaliation. Rather, several Black employees voluntarily resigned to pursue alternative employment opportunities.

22.     Defendant denies the allegations in Paragraph 22 of the Complaint. Black drivers were not terminated or caused to resign due to unfair treatment or unequal pay, as the objective

evidence demonstrates that Defendant's pay practices were race-neutral with employees of all races represented at both the top and bottom of the pay scale, and when departing Black drivers were replaced, three of the five new hires were Black employees, contradicting any pattern of discriminatory treatment.

**Mark Blair**

23.    Defendant admits Paragraph 23 of the Complaint.

24.    Defendant admits Paragraph 24 of the Complaint.

25.    Defendant lacks knowledge or information sufficient to form a belief as to Blair's claimed experience and therefore denies the same as set forth in paragraph 25 of the Complaint.

26.    Defendant lacks knowledge or information sufficient to form a belief as to Blair's claimed experience and therefore denies the same as set forth in paragraph 26 of the Complaint.

27.    Defendant lacks knowledge or information sufficient to form a belief as to Blair's claimed experience and therefore denies the same as set forth in paragraph 27 of the Complaint.

28.    Defendant lacks knowledge or information sufficient to form a belief as to Blair's claimed experience and therefore denies the same as set forth in paragraph 28 of the Complaint.

29.    Defendant denies the allegations in Paragraph 29.

30.    Defendant admits Paragraph 30 of the Complaint.

31.    Defendant denies the allegations in Paragraph 31 of the Complaint. Defendant has no knowledge or information sufficient to form a belief about Blair's purported personal observations regarding other employees' treatment, and on that basis denies the same. Moreover, Blair never claimed that his pay was discriminatory or that Black employees were paid less than non-Black employees, nor did he make any other complaints that could even be remotely construed as a race discrimination complaint. In fact, Blair's own text messages to management demonstrate that he was voluntarily seeking higher-paying employment elsewhere, stating he was "looking for

another job to support [his] wife," expressing appreciation for management's treatment, and promising to provide notice before leaving—communications entirely inconsistent with any claim of discriminatory treatment.

32.    Defendant denies the allegations in Paragraph 32 of the Complaint. Plaintiff was paid a rate of $26 per hour while the average hourly rate for Drivers was $24.54. Moreover, the highest non-supervisor rate was $27/hr and was paid to 5 employees, one of which was Black (the others were 2 Hispanic, 1 Native American, and 1 White), thus negating any allegation that Blair was paid less that non-Black drivers. Additionally, the highest paid driving position is Driver Supervisor at $28/hr and is held by a Black individual, further demonstrating that Defendant's compensation practices were race-neutral and merit-based.

33.    Defendant denies the allegations in Paragraph 33 of the Complaint. The highest non-supervisor rate of $27/hr was paid to five employees representing multiple races—one Black, two Hispanic, one Native American, and one White—negating any allegation of racial pay disparities. Furthermore, the highest-paid driving position (Driver Supervisor at $28/hr) was held by a Black individual. Only six of the other 28 drivers were paid more than Plaintiff, while 22 drivers were paid the same rate or less than Plaintiff, and these employees included Black, White, Hispanic, Native American, and multi-racial individuals. The objective pay data unequivocally establishes that members of all races were represented both at the top and bottom of the pay scale, demonstrating that Defendant's compensation practices were based on legitimate, non-discriminatory factors rather than race.

34.    Defendant denies the allegations in Paragraph 34 of the Complaint.

35.    Defendant denies the allegations in Paragraph 35 of the Complaint. While Blair did request an increase in pay, he never claimed that his pay was discriminatory, nor did he make any other complaints that could have been construed as a race discrimination complaint.

36.    Defendant admits the allegations in Paragraph 36 of the Complaint.

37.    Defendant is without sufficient information to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and therefore, denies them.

38.    Defendant is without sufficient information to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint, and therefore, denies them. Compensation was distributed across all racial groups without regard to race, with employees of every race— including Black employees—represented at both the highest and lowest pay scales. The pay structure demonstrates that only a small number of drivers earned more than Blair, while the vast majority earned the same or less, and the highest-paid driving position was held by a Black individual, negating any allegation of racial pay disparities.

39.    Defendant is without sufficient information to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and therefore, denies them.

40.    Defendant admits that various employees made inquiries about pay but denies that these were only made by Black employees, that they were related to or expressed as race-based concerns, or that responses were discriminatory.

41.    Defendant denies the allegations in Paragraph 41 of the Complaint. Howell did not know that concerns about pay were specifically from Black drivers, as pay inquiries came from employees of various races during this period, and any assumption that only Black drivers were seeking pay increases is unfounded.

42.    Defendant denies the allegations in Paragraph 42 of the Complaint. These allegations are false or statements taken out of context. Any statements about employees being a "cancer" or "getting rid of all the cancer" were not directed at Black employees but rather at any and all employees who were disgruntled, constantly complaining, negatively impacting employee morale, and generally creating a poor working environment. Brandi Howell did state at an all-

employee meeting—not just to a group of Black employees as alleged—that if employees did not like working at Finley then they were welcome to leave, and this statement was directed at any dissatisfied employees regardless of race.

43.    Defendant denies the allegations in Paragraph 43 of the Complaint. Howell made no such remarks on April 8, 2024, or at any other time that were directed at or intended to refer to Black employees.

44.    Defendant denies the allegations in Paragraph 44 of the Complaint. There was no hostile work environment, as the allegations mischaracterize and take Howell's statements out of context. Any statements about employees being a "cancer" or "getting rid of all the cancer" were not directed at Black employees but rather at employees who were disgruntled, constantly complaining, negatively impacting employee morale, and generally creating a poor working environment.

45.    Defendant denies the allegations in Paragraph 45 of the Complaint. These comments did not specifically target Black drivers, as the statements were directed at any employees who were disgruntled, constantly complaining, negatively impacting employee morale, and generally creating a poor working environment, regardless of race. Howell's comments were made at an all-employee meeting and were directed at any dissatisfied employees, not specifically at Black employees, and were taken out of context to support these false allegations.

46.    Defendant denies the allegations in Paragraph 46 of the Complaint. Defendant has no knowledge or information sufficient to form a belief about the specific content of any alleged conversations between Blair and management regarding pay rates relative to Blair's peers, and on that basis denies the same.

47.    Defendant denies the allegations in Paragraph 47 of the Complaint.

48.    Defendant denies the allegations in Paragraph 48 of the Complaint and has no

knowledge or information sufficient to form a belief about Blair's personal thoughts, intentions, or what he allegedly raised during any meetings, and on that basis denies the same.

49.    Defendant denies the allegations in Paragraph 49 of the Complaint and has no knowledge or information sufficient to form a belief about Blair's personal thoughts, intentions, or the meaning he allegedly intended to convey through his word choice, and on that basis denies the same.

50.    Defendant denies the allegations in Paragraph 50 of the Complaint and has no knowledge or information sufficient to form a belief about what was allegedly understood from any conversations or Blair's personal beliefs about other drivers' concerns, and on that basis denies the same.

51.    Defendant denies the allegations in Paragraph 51 of the Complaint.

52.    Defendant denies the allegations in Paragraph 52 of the Complaint and has no knowledge or information sufficient to form a belief about the specific content of any alleged conversations between Blair and management, and on that basis denies the same.

53.    Defendant denies the allegations in Paragraph 53 of the Complaint and has no knowledge or information sufficient to form a belief about the specific content of any alleged conversations between Blair and management, and on that basis denies the same.

54.    Defendant denies the allegations in Paragraph 54 of the Complaint and has no knowledge or information sufficient to form a belief about the specific words allegedly used by Blair during any conversations, and on that basis denies the same.

55.    Defendant denies the allegations in Paragraph 55 of the Complaint and has no knowledge or information sufficient to form a belief about Blair's alleged motivations or thought processes, and on that basis denies the same.

56.    Defendant denies the allegations in Paragraph 56 of the Complaint as it disputes

the meaning and context which Plaintiffs are trying to assign to Howell's statement. Defendant admits that Howell made statements at an all-employee meeting that anyone who was unhappy was welcome to leave; the comment was directed at any dissatisfied employees, not specifically at Black employees.

57.    Defendant denies the allegations in Paragraph 57 of the Complaint and has no knowledge or information sufficient to form a belief about any alleged conversations between Blair and other employees regarding pay raises, and on that basis denies the same.

58.    Defendant denies the allegations in Paragraph 58 of the Complaint and has no knowledge or information sufficient to form a belief about Blair's alleged decision-making process or motivations, and on that basis denies the same.

59.    Defendant admits that Blair requested pay increases from Howell, but is uncertain on whether that occurred on May 1, 2024.

60.    Defendant admits that Blair requested pay raises from Howell, but denies that he had been with the company the longest or that he had not received any pay raise since the start of the COVID pandemic.

61.    Defendant denies the allegations in Paragraph 61 of the Complaint.

62.    Defendant has no knowledge or information sufficient to form a belief about Blair's alleged perceptions, feelings, or emotional state during any conversations, and on that basis denies the same as set forth in Paragraph 62 of the Complaint.

63.    Defendant has no knowledge or information sufficient to form a belief about Blair's alleged perceptions, feelings, or emotional state during any conversations, and on that basis denies the same as set forth in Paragraph 63 of the Complaint.

64.    Defendant denies the allegations in Paragraph 64 of the Complaint. Blair's text messages to Howell on April 23, 2024, demonstrate that he was voluntarily seeking higher-paying

employment for financial reasons, stating he was "looking for another job to support [his] wife," and he expressed appreciation for management's treatment, thanking Howell multiple times for "everything [she has] done." These communications are entirely inconsistent with any claim of discriminatory mistreatment or pay disparities, and instead show Blair's gratitude toward management while pursuing better financial opportunities elsewhere.

65.    Defendant denies the allegations in Paragraph 65 of the Complaint. Blair's text message was not sent in hopes of receiving fair pay for Black workers but rather expressed his personal desire to find higher-paying employment to support his wife, as he explicitly stated in his April 23, 2024 communications.

66.    Defendant admits that Blair's employment was terminated on May 1, 2024, but states that the termination was the result of him leaving work early without permission on multiple occasions and posting disparaging social media messages.

67.    Defendant denies the allegations in Paragraph 67 of the Complaint. Blair's employment was not terminated because he raised concerns about pay for Black drivers, but rather he was terminated for legitimate, non-discriminatory reasons including policy violations.

68.    Defendant denies the allegations in Paragraph 68 of the Complaint. The evidence demonstrates that Black drivers were not treated differently or less favorably in work assignments, as for many months one or more Black employees were at or near the top of the list in hours worked, and Blair himself was usually in the top half of drivers in terms of hours worked during months he was not on leave of absence.

69.    Defendant denies the allegations in Paragraph 69 of the Complaint. The statistical evidence demonstrates that Black drivers were not assigned a disproportionately higher number of "final loads," as Black employees received 33% of the "last loads" while comprising 39% of the driver workforce, meaning they actually received fewer final load assignments than their

representation in the workforce would suggest.

70.     Defendant denies the allegations in Paragraph 70 of the Complaint.

71.     Defendant denies the allegations in Paragraph 71 of the Complaint.

72.     Defendant denies the allegations in Paragraph 72 of the Complaint.

73.     Defendant denies the allegations in Paragraph 73 of the Complaint. The statistical data shows that Black employees were assigned 33% of the "last loads" while comprising 39% of the driver workforce, meaning Black drivers actually received a lower percentage of final load assignments than their representation in the workforce, directly refuting any claim that they were disproportionately burdened with final loads.

74.     Defendant denies the allegations in Paragraph 74 of the Complaint.

75.     Defendant denies the allegations in Paragraph 75 of the Complaint.

76.     Defendant denies the allegations in Paragraph 76 of the Complaint.

77.     Defendant denies the allegations in Paragraph 77 of the Complaint. Defendant has no knowledge or information sufficient to form a belief about Blair's purported personal observations regarding other employees' treatment of bereavement and other leaves, and on that basis denies the same.

78.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation regarding bereavement leave requests and therefore denies same as set forth in paragraph 78 of the Complaint.

79.      Defendant denies the allegations in Paragraph 79 of the Complaint, as Blair was given bereavement leave in accordance with company policy.

80.     Defendant denies the allegations in Paragraph 80 of the Complaint.

81.     Defendant denies the allegations in Paragraph 81 of the Complaint. Any bereavement leave decisions were handled in accordance with company policy.

82.     Defendant denies the allegations in Paragraph 82 of the Complaint. All employees, regardless of race, were treated equally with respect to bereavement and sick leave requests in accordance with company policy.

83.     Defendant denies the allegations in Paragraph 83 of the Complaint. All employees, regardless of race, were treated equally with respect to bereavement and sick leave requests in accordance with company policy. Plaintiff may be mistaken in his understanding of an employee-led effort to take up a collection for Rudy based on his loss of a family member.

84.     Defendant has no knowledge or information sufficient to form a belief about the specific timing of these personal family circumstances, and on that basis denies the same as set forth in paragraph 84 of the Complaint.

85.     Defendant denies any allegation in Paragraph 85 of the Complaint that collections or leave policies were administered in a racially discriminatory manner and states that any such decisions were made without regard to race and/or led by employees on their own accord and initiative and not sponsored or sanctioned by Defendant.

86.     Defendant denies the allegations in Paragraph 86 of the Complaint that any failure to organize collections was based on race or constituted discriminatory treatment.

87.     Defendant denies the allegations in Paragraph 87 of the Complaint. Defendant denies that leave decisions were made based on race and states that any leave granted was in accordance with company policy and applicable law without regard to race.

88.     Defendant denies the allegations in Paragraph 88 of the Complaint. Defendant denies that inquiries about return dates were racially motivated and states that such communications were standard business practice applied to all employees.

89.     Defendant denies the allegations in Paragraph 89 of the Complaint. Blair was terminated on May 1, 2024, due to his repeated violations of company policy, including leaving

work early without permission on multiple occasions and posting derogatory comments about the company on social media, not because of any discussions about pay or his race.

90.    Defendant denies the allegations in Paragraph 90 of the Complaint. Blair was terminated for legitimate, non-discriminatory reasons related to his workplace conduct and policy violations, not because of his race or any alleged protected activity.

91.    Defendant denies the allegations in Paragraph 91 of the Complaint. Any employee departures during this period were due to voluntary resignations to pursue higher-paying positions with competitors or terminations for legitimate, non-discriminatory business reasons.

92.    Defendant denies the allegations in Paragraph 92 of the Complaint. Blair and any other employees were terminated or resigned for reasons unrelated to their race or any requests regarding pay, and Defendant's employment decisions were based on legitimate, non-discriminatory factors.

93.    Defendant denies the allegations in Paragraph 93 of the Complaint. Of the five drivers hired to replace departing drivers in April and May 2024, three were Black, one was Hispanic, and one was White, directly contradicting any allegation that Black drivers were replaced by predominately non-Black drivers.

94.    Defendant denies the allegations in Paragraph 94 of the Complaint. Defendant denies that Blair suffered any mental anguish, embarrassment, isolation, or loss of confidence due to any discriminatory conduct by Defendant, as Defendant did not engage in any discriminatory conduct and Blair's employment was terminated for legitimate, non-discriminatory reasons related to his workplace conduct and policy violations.

**Donnell James**

95.    Defendant admits Paragraph 95 of the Complaint.

96.    Defendant admits the allegations in Paragraph 96 of the Complaint

97.    Defendant is without knowledge sufficient to admit or deny the allegations in Paragraph 97 of the Complaint, and therefore denies same.

98.    Defendant denies the allegations in Paragraph 98 of the Complaint that James and Blair were the most experienced drivers at Finley. The employment records do not support this claim.

99.    Defendant lacks knowledge or information sufficient to form a belief about James' ranking as the third most experienced cement truck driver as alleged in Paragraph 99 of the Complaint and therefore denies the same.

100.    Defendant denies the allegations in Paragraph 100 of the Complaint.

101.    Defendant denies the allegations in Paragraph 101 of the Complaint. James had significant performance and attendance issues that contradicted any claim of never missing work or consistently volunteering for weekend coverage.

102.    Defendant denies the allegations in Paragraph 102 of the Complaint.

103.    Defendant admits Paragraph 103 of the Complaint.

104.    Defendant denies the allegations in Paragraph 104 of the Complaint. Black drivers were not treated differently or less favorably than non-Black drivers in pay, hours worked, or hiring practices, as evidenced by: (a) the diverse pay distribution across all racial groups with Black employees represented at both the highest ($28/hour Driver Supervisor) and various other pay levels; (b) employment records showing Black employees, including James, were frequently at or near the top in monthly hours worked; and (c) the fact that of the five replacement drivers hired in April-May 2024, three were Black employees, demonstrating non-discriminatory hiring practices.

105.    Defendant denies the allegations in Paragraph 105 of the Complaint. All employees are informed they are eligible for, but not promised, a pay increase after 90 days, which is dependent on performance during that period. James did not meet the performance standards

necessary to receive a raise after his initial 90-day period, contrary to his allegation that he was promised a raise.

106.    Defendant denies the allegations in Paragraph 106 of the Complaint that it denied James a promised raise. None of Finley's employees are promised a pay raise after 90 days - raises are based on performance, not guaranteed.

107.    Defendant denies the allegations in Paragraph 107 of the Complaint. Pay raises were distributed based on performance and merit, not race, as evidenced by multiple Black employees earning wages at or above James' rate.

108.    Defendant denies the allegations in Paragraph 108 of the Complaint. The pay data demonstrates that employees of all races were represented at both the highest and lowest pay scales, with the highest-paid Driver Supervisor position being held by a Black employee.

109.    Defendant denies the allegations in Paragraph 109 of the Complaint. Wages are based on performance and merit, not race, as evidenced by multiple Black employees earning wages at or above James' rate.

110.    Defendant denies the allegations in Paragraph 110 of the Complaint. James was paid $24 per hour, which was just marginally below the average driver rate of $24.54, and pay was based on performance and experience, not race. Any disparity in James' pay compared to other drivers can be attributed to his significant performance and attendance issues.

111.    Defendant denies the allegations in Paragraph 111 of the Complaint. Any disparity in James' pay compared to other drivers can be attributed to his significant performance and attendance issues.

112.    Defendant denies the allegations in Paragraph 112 of the Complaint. James did not qualify for a pay increase due to his performance issues, including persistent attendance problems and failure to communicate with supervisors.

113.    Defendant denies the allegations in Paragraph 113 of the Complaint. Any discussions about pay were addressed according to company policy without regard to race James' persistent attendance issues, failure to communicate with his supervisor regarding his absence, and his supervisor's knowledge that James had accepted employment with a competitor precluded him from receiving a raise. Notably, the Driver Supervisor responsible for making pay raise recommendations was Black, further negating any inference of racial discrimination.

114.    Defendant lacks knowledge or information sufficient to form a belief about the alleged conversation between Keith and Howell as described in Paragraph 114 of the Complaint and therefore denies the same.

115.    Defendant denies the allegations in Paragraph 115 of the Complaint.

116.    Defendant denies the allegations in Paragraph 116 of the Complaint. Howell had no knowledge that concerns about pay were specifically from Black drivers, as pay inquiries came from employees of various races.

117.    Defendant denies the allegations in Paragraph 117 of the Complaint. Any responses to pay inquiries were handled according to company policy.

118.    Defendant denies the allegations in Paragraph 118 of the Complaint. Pay raises were based on employees demonstrating exemplary performance during the evaluation period. The Driver Supervisor responsible for making pay raise recommendations was Black, and it defies logic that he would discriminate against other individuals of his own race. This fact not only negates any inference of discrimination but also undermines James' argument that Finley would not promote Black employees, as a Black employee held this supervisory position.

119.    Defendant denies the allegations in Paragraph 119 of the Complaint. The assignment of work tasks was based on operational needs, not race. No employee was guaranteed 60 hours per week, and employment records show that for many months, one or more Black

employees were at or near the top of the list in hours worked, with James usually in the top half of drivers in terms of hours worked during months he was not on leave, directly contradicting any claim of discriminatory work assignments.

120.    Defendant denies the allegations in Paragraph 120 of the Complaint. The statistical data shows that Black employees were assigned 33% of the "last loads" while comprising 39% of the driver workforce, meaning Black drivers actually received a lower percentage of final load assignments than their representation in the workforce, directly refuting any claim that they were disproportionately burdened with final loads.

121.    Defendant denies the allegations in Paragraph 121 of the Complaint.

122.    Defendant denies the allegations in Paragraph 122 of the Complaint.

123.    Defendant denies the allegations in Paragraph 123 of the Complaint.

124.    Defendant denies the allegations in Paragraph 124 of the Complaint. Last load assignments were distributed based on operational needs, not race. During James' employment, Black drivers comprised 39% of the driver workforce but received only 33% of "last load" assignments, while White drivers (31% of workforce) received 30% of last loads, Hispanic drivers (23% of workforce) received 31%, and Other drivers (8% of workforce) received 6%, demonstrating that Black employees actually received fewer last loads than their proportional representation in the workforce would suggest, directly refuting any claim of discriminatory assignment practices.

125.    Defendant denies the allegations in Paragraph 125 of the Complaint. Defendant has no knowledge or information sufficient to form a belief about this purported practice or any alleged awareness of such conduct through GPS tracking, and on that basis denies the same. This allegation is unsupported by any objective evidence and appears to be speculative in nature.

126.    Defendant denies the allegations in Paragraph 126 of the Complaint.

127.    Defendant denies the allegations in Paragraph 127 of the Complaint.

128.    Defendant denies the allegations in Paragraph 128 of the Complaint.

129.    Defendant denies the allegations in Paragraph 129 of the Complaint.

130.    Defendant lacks knowledge or information sufficient to admit or deny the incident referred to in paragraph 130 of the Complaint.

131.    Defendant denies the allegations in Paragraph 131 of the Complaint.

132.    Defendant denies the allegations in Paragraph 132 of the Complaint.

133.    Defendant denies the characterization of events in Paragraph 133 of the Complaint. Any request for a shorter workday was denied due to James' persistent attendance issues and failure to communicate with his supervisor, not because of his race.

134.    Defendant denies the allegations in Paragraph 134 of the Complaint. James had documented attendance issues that required supervisory intervention, and it is infrequently required that employees work on weekends.

135.    Defendant denies the allegations in Paragraph 135 of the Complaint.

136.    Defendant denies the allegations in Paragraph 136 of the Complaint.

137.    Defendant lacks knowledge or information sufficient to form a belief about James' medical condition, and therefore denies the allegations in Paragraph 137.

138.    Defendant lacks knowledge or information sufficient to form a belief about James' alleged allergic reaction, but notes that James failed to communicate with his supervisor that he was in the hospital, as required by company protocol, and therefore denies the allegations in Paragraph 138.

139.    Defendant admits that James' employment ended on April 30, 2024, but denies it was a termination while on medical leave. James' termination was due to persistent attendance issues and failure to communicate with his supervisor, and the fact that he had already begun

employment with a competitor.

140.    Defendant denies the allegations in Paragraph 140 of the Complaint.

141.    Defendant denies the allegations in Paragraph 141 of the Complaint.

142.    Defendant denies the allegations in Paragraph 142 of the Complaint.

143.    Defendant denies the allegations in Paragraph 143 of the Complaint.

144.    Defendant denies the allegations in Paragraph 144 of the Complaint. These allegations are false or taken out of context. Any statements about employees being a "cancer" or "getting rid of all the cancer" were not directed at Black employees but rather at employees who were disgruntled, constantly complaining, negatively impacting employee morale, and generally creating a poor working environment, regardless of race.

145.    Defendant denies the allegations in Paragraph 145 of the Complaint. Employee departures were due to voluntary resignations or terminations for legitimate business reasons, and of the five replacement drivers hired, three were Black.

146.    Defendant denies the allegations in Paragraph 146 of the Complaint. Defendant denies that James suffered any mental anguish, humiliation, isolation, or loss of professional reputation due to any discriminatory conduct by Defendant, as Defendant did not engage in any discriminatory conduct and James' employment was terminated for legitimate, non-discriminatory reasons related to his workplace conduct and policy violations.

**Count I: Race Discrimination of Violation of 42 U.S.C. § 1981 and Title VII**

147.    Defendant incorporates its responses to Paragraphs 1-146 as if fully set forth herein.

148.    Defendant admits that it is an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and is subject to the provisions of 42 U.S.C. § 1981 and Title VII.

149.    Defendant admits that Plaintiffs are Black individuals but denies they were qualified for their positions given Blair's repeated violations of company policy by leaving work

early without permission and posting derogatory social media content, and James' persistent attendance issues and failure to communicate with supervisors.

150.    Defendant denies the allegations in Paragraph 150 of the Complaint.

151.    Defendant denies the allegations in Paragraph 151 of the Complaint.

152.    Defendant denies the allegations in Paragraph 152 of the Complaint.

153.    Defendant denies the allegations in Paragraph 153 of the Complaint.

**Count II: Retaliation in Violation of 42 U.S.C. § 1981 and Title VII**

154.    Defendant incorporates its responses to Paragraphs 1-153 as if fully set forth herein

155.    Defendant admits that it is an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and is subject to the provisions of 42 U.S.C. § 1981 and Title VII.

156.    Defendant admits that Plaintiffs are Black individuals but denies they were qualified for their positions given their documented performance and policy violations.

157.    Defendant denies the allegations in Paragraph 157 of the Complaint.

158.    Defendant denies the allegations in Paragraph 158 of the Complaint.

159.    Defendant denies the allegations in Paragraph 159 of the Complaint.

160.    Defendant denies the allegations in Paragraph 160 of the Complaint.

**Compensatory and Equitable Relief**

161.    Defendant denies the allegations in Paragraph 161 of the Complaint.

162.    Defendant denies the allegations in Paragraph 162 of the Complaint.

163.    Defendant denies the allegations in Paragraph 163 of the Complaint.

164.    Defendant denies the allegations in Paragraph 164 of the Complaint.

**Attorneys' Fees**

165.    Defendant denies the allegations in Paragraph 165 of the Complaint.

**Exemplary Damages**

166.    Defendant denies the allegations in Paragraph 166 of the Complaint.

## JURY DEMAND

167.    Defendant acknowledges Plaintiffs' jury demand but denies that Plaintiffs are entitled to any relief warranting a trial.

## AFFIRMATIVE DEFENSES

168.    Plaintiffs fail to state a claim upon which relief may be granted.

169.    Except to the extent expressly admitted herein, Defendant denies the material allegations of the Complaint and demands strict proof thereof.

170.    Defendant's actions were conducted in good faith.

171.    Plaintiffs are not entitled to the relief requested because Plaintiff failed to mitigate their damages, if any.

172.    Plaintiffs' claims are barred because all decisions and actions toward Plaintiffs were taken in good faith and for legitimate, non-retaliatory, non-discriminatory reasons.

173.    Even if Plaintiffs could prove intentional discrimination, which is denied, Defendant would have taken the same employment actions in the absence of any unlawful motivating factors.

174.    Defendant denies that Plaintiff James had any adverse employment action taken against him as he was not involuntarily terminated but rather voluntary resigned and/or abandoned his job when he accepted employment with another competitor.

175.    Defendants assert that Plaintiffs' claims are barred in part or completely by the doctrine of "after acquired evidence."

176.    Defendant hereby gives notice that they intend to rely upon such other defenses as may become available or present themselves during the discovery process in this case and hereby

reserves their right to amend this Answer to assert such defenses.

## PRAYER

Defendant prays that its answer be deemed good and sufficient and all claims by Plaintiffs against Defendant be dismissed, with prejudice, and that other further relief, legal and equitable, including attorney's fees, be awarded to Defendant.

Respectfully submitted,

**MAYER LLP**
750 North Saint Paul Street, Suite 700
Dallas, Texas 75201
214.379.6900

By:  _/s/ Robert L. Rickman_
     Robert L. Rickman
     State Bar No. 24013400
     E-Mail: rrickman@mayerllp.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on September 9, 2025, the foregoing was electronically filed, as required by the United States District Court for the Northern District of Texas, using the Court's CM/ECF filing system, which will provide notice and a copy of this document, with attachments, to the following, who are indicated to be registered ECF filers in the United States District Court for the Northern District of Texas:

<table>
<tr><td>Ronald R. Huff<br>Attorney and Counselor at Law<br>112 South Crockett Street<br>Sherman, Texas 75090<br>onhuff@gcecisp.com<br><br>*Counsel for Plaintiff*</td><td>☐ E-MAIL<br>☐ HAND DELIVERY<br>☐ FACSIMILE<br>☐ OVERNIGHT MAIL<br>☐ REGULAR, FIRST-CLASS MAIL<br>☒ CM/ECF<br>☐ CERTIFIED MAIL/RETURN RECEIPT REQUESTED</td></tr>
</table>

_/s/ Robert L. Rickman_
Robert L. Rickman